IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02294–EWN–OES


GORDON ROBERTSON,

      Plaintiff,

v.

LAS ANIMAS COUNTY SHERIFF'S DEPARTMENT,
LAS ANIMAS COUNTY SHERIFF JAMES CASIAS,
KURT EMERY,
KADE BASSETT,
BOARD OF COUNTY COMMISSIONERS OF LAS ANIMAS
COUNTY, COLORADO,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a civil rights case.  Plaintiff Gordon Robertson alleges that (1) Defendants Kurt Emery, Kade Bassett, and the Las Animas County Sheriff James Casias violated his civil rights by wrongfully arresting him; and (2) Defendants Casias, The Las Animas County Sheriff's Department, and the County of Las Animas failed to provide Plaintiff with telephone services for the deaf in violation of the American Disabilities Act ("ADA").  This matter is before the court on: (1) "Defendant Kurt Emery's Motion to Dismiss Plaintiff's Complaint for Untimely Service of Process," filed June 15, 2005; (2) "Defendants' Motion for Summary Judgment," filed July 6,

2005; (3) "Defendant Kurt Emery's Objection to Magistrate Judge's Order Dated October 12,

2005," filed October 14, 2005; (4) "Unopposed Plaintiff's Request for Leave to File a Surreply to

Defendants' Reply Regarding Motion for Summary Judgment," filed October 23, 2005; and (5)

"Defendant Kurt Emery's Motion to Strike Plaintiff's Response to His Objection to Magistrate

Judge's Minute Order of October 12, 2005," filed November 22, 2005.  Jurisdiction is based on

28 U.S.C. § 1331 (2005).

## FACTS

### *1.     Factual Background[1]*

#### *a.     Plaintiff's Arrest*

During 2003, Terri Murnane called 911 emergency services to complain that someone had

been looking into her children's bedroom windows late in the evening.  (Defs.' Mot. for Summ.

J., Statement of Undisputed Material Facts ¶ 1 [filed July 6, 2005] [hereinafter "Defs.' Br."];

*admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 1.)  On September 19, 2003, Defendant

Bassett visited Murnane at her residence in response to her 911 complaints.  (*Id.*, Statement of

Undisputed Material Facts ¶ 2; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed

---

[1]Plaintiff's response to Defendants' motion for summary judgment contains a section
entitled "Disputed Material Facts Upon Which the Case Could Turn."  (Pl.'s Resp. to Defs.' Mot.
for Summ. J. at 51–68 [filed Aug. 29, 2005] [hereinafter "Pl.'s Resp."].)  For purposes of this
Order and Memorandum of Decision, I refer to this section as "Statement of Additional Disputed
Facts."  The majority of Plaintiff's proffered factual averments in this section do not set forth
"facts."  (*Id.*)  Rather, Plaintiff asserts a litany of legal conclusions and conclusory arguments
without any citation to the record.  Specifically, the following factual averments assert legal
conclusions or conclusory allegations without any support: one, two, three, eight, ten, eleven,
twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty-three.  (*Id.*)
Accordingly, I do not address these additional disputed facts.

Facts ¶ 2.)  Murnane reported that a man had come onto her property and was peering into her children's bedroom windows in the late evening.  (*Id.*)  On September 25, 2003, Defendant Bassett returned to the area surrounding Murnane's house to conduct surveillance.  (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 3.)  Defendant Bassett testified that he saw a male, whom he believed to be Plaintiff, leave Plaintiff's residence and walk toward Murnane's residence.  (*Id.*, Statement of Undisputed Material Facts ¶ 4, Ex. A–1 at 31–32 [Dep. of Bassett].)

On October 2, 2003, Murnane called 911 to report that she observed Plaintiff on her property, standing between the two trailers in her yard.  (*Id.*, Statement of Undisputed Material Facts ¶ 5, Ex. A–1 at 43–44 [Dep. of Bassett].)  Plaintiff disputes this fact, but does not offer any support or explanation for the dispute.  (Pl.'s Resp., Resp. to Undisputed Facts ¶ 5.)  Defendant Bassett testified that he returned to the Murnane property on October 3, 2003, and observed that the barbed wire fence between Murnane's and Plaintiff's property had been lifted up to allow a person to pass under the fence.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 7, Ex. A–1 at 75–76 [Dep. of Bassett].)  Plaintiff asserts that Defendant Bassett did not examine Plaintiff's property because this activity is not reflected in Defendant Bassett's daily logs.  (Pl.'s Resp., Resp. to Undisputed Facts ¶ 7.)

On October 16, 2003, Murnane obtained a Temporary Civil Protection Order ("TCPO") against Plaintiff.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 8.)  The TCPO stated that Plaintiff:

shall not harass, stalk, injure, threaten, or molest the [Murnanes] or otherwise
violate this Order. [Plaintiff] shall not use, attempt to use, or threaten to use
physical force against the [Murnanes] that would reasonably be expected to cause
bodily injury.  [Plaintiff] shall not engage in any conduct that would place the
[Murnanes] in reasonable fear of bodily injury.

(*Id.*, Ex. A–3 [TCPO].)  On November 4, 2003, Murnane reported to Defendant Emery that her

daughter, Samantha, had observed Plaintiff peering into Samantha's bedroom window.  (*Id.*, Ex.

A–5 at 1 [Warrantless Arrest Affidavit], Ex. A–2 ¶ 3 [Aff. of Def. Emery].)  Defendant Emery

contends that he spoke with Samantha and confirmed that Samantha saw Plaintiff at her bedroom

window.  (*Id.*)  Following the meeting with the Murnanes, Defendant Emery believed that he had

a good faith basis for probable cause to arrest Plaintiff for violation of the TCPO.  (*Id.*)

Defendant Emery contends that he assessed Murnane and Samantha to be credible and reliable.

(*Id.*, Ex. A–2 ¶ 6 [Aff. of Def. Emery].)

On November 4, 2003, at approximately 9:20 p.m., Defendant Emery arrested Plaintiff

under a warrantless affidavit for violation of the TCPO issued by the County Court of Las Animas

County.  (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Pl.'s Resp., Resp. to

Undisputed Facts ¶ 12.)  Defendant Emery's affidavit included portions of a previous affidavit

drafted by Defendant Bassett for Plaintiff's arrest.[2]  (*Id.*, Statement of Undisputed Material Facts

¶ 13; *deemed admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 13.)  Defendant Emery

---

[2]Plaintiff disputes Defendants' proffered factual averment number thirteen, but, Plaintiff's
explanation does not actually dispute Defendants' fact.  Plaintiff's explanation and response is
simply a legal argument regarding Plaintiff's opinion that Defendant Emery did not have probable
cause to arrest Plaintiff.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 13.)  Thus, I
deem Defendants' fact number thirteen admitted.

contends that he included the portions of Defendant Bassett's affidavit because he wanted the judge to understand the historical background behind the Murnanes complaints. (*Id.*, Statement of Undisputed Material Facts ¶ 14, Ex. A–2 ¶ 10 [Aff. of Def. Emery].) Plaintiff denies that Samantha saw him through her bedroom window. (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.) In support, Plaintiff relies on Samantha's testimony in a Las Animas County Court proceeding nine days after Plaintiff's arrest, wherein Samantha testified that she did not see Plaintiff she only heard him at her door. (*Id.*, Ex. A–11 at 47 [11/13/03 Transcript of County Court Case No. 2003 C 673].)

On November 5, 2003, a Las Animas County District Court Judge ruled that there was no probable cause for Plaintiff's arrest and ordered Plaintiff released from custody. (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 16.) Defendant Emery met with the judge to discuss the reason for his finding of no probable cause. (*Id.*, Statement of Undisputed Material Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 17.) The judge told Defendant Emery that he found insufficient probable cause because Defendant Emery's affidavit contained a large amount of information from Defendant Bassett's previous affidavit, which he had denied for lack of probable cause. (*Id.*)

Defendant Bassett did not participate in the investigation of the complaint upon which Defendant Emery based Plaintiff's arrest, was not aware of the warrantless arrest affidavit, was not present at Plaintiff's arrest, and had no role in Plaintiff's incarceration on that date. (*Id.*, Statement of Undisputed Material Facts ¶ 19; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 19.) Defendant Casias did not participate in the investigation of the

complaint upon which Defendant Emery arrested Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶ 18; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 18.)  Defendant Casias was not aware of the warrantless arrest affidavit, he was not present at Plaintiff's arrest, and he had no role in Plaintiff's incarceration.[3]  (*Id.*)

     **b.**     ***Plaintiff's Incarceration***

Plaintiff asserts that he became hearing impaired as an adult.  (Pl.'s Resp. at 3.)  Plaintiff has an implanted cochlear device which allows him to hear "in most face-to-face situations."  (*Id.* at 4.)  Although Plaintiff is hearing impaired, Plaintiff testified that at the time of his arrest, he did not have any trouble understanding Defendant Emery and he was able to contact his attorney. (Defs.' Br., Ex. A–4 at 53–54 [Dep. of Pl.].)  Specifically, Plaintiff testified as follows:

> Q.     Do you recall having any trouble understanding him?
> A.     No.
>
> Q.     Did you ask to contact your attorney?
> A.     Yes.
>
> Q.     Did you ask [Defendant] Emery to allow you to contact your attorney?
> A.     No, I didn't ask him to contact my attorney.
>
> Q.     I'm sorry, I was speaking over you.  Let me just finish my question. Did you ask [Defendant] Emery if you could contact your attorney?
> A.     Yes.

---

[3]Plaintiff denies Defendants' factual averments regarding Defendants Bassett's and Casias' participation in Plaintiff's arrest.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 18,19.) Plaintiff's response consists solely of conclusory allegations unsupported by any citation to the record or any admissible evidence.  Plaintiff cannot create a genuine issue of fact by simply asserting conclusory allegations and legal conclusions without anything more.  *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).  Accordingly, I deem these facts admitted as true.

> Q.    And is it then that you proceeded to go to the computer to make that contact?
>
> A.    Yes.
>
> Q.    Was it you who made the computer contact with your attorney or was it your niece?
>
> A.    I don't recall whether it was me or my niece.  I may have called and had her continue to call.  One or the other of us made the call, I know, using the computer and the relay service.
>
> Q.    Was the niece there?
>
> A.    Yes.
>
> Q.    So you say you might have initiated the computer process and then she took it over?
>
> A.    Yes.

(*Id.*)  During the booking process the detention officers asked Plaintiff many questions in an effort to complete the intake and screening forms.  (*Id.*, Ex. A–4 at 57 [Dep. of Pl.].)  Plaintiff recalls responding to all the questions.  (*Id.*)  Plaintiff did not inform the detention officers that he had a hearing impairment at any point during the booking process.  (*Id.*, Ex. A–4 at 58–59 [Dep. of Pl.].)  Plaintiff acknowledges that the detention officers asked him whether he had any physical or mental problems.  (*Id.*, Ex. A–4 at 58 [Dep. of Pl.].)

> Q.    And once again, you're welcome to look at the forms, but do you recall them asking whether you had any physical health problems or mental health problems?
>
> A.    They probably asked me that but I probably answered that I didn't have any physical health problems or no mental health problems.  They didn't ask me anything about the hearing.
>
> Q.    Now, do you think that the hearing is not a health problem?
>
> A.    No, I don't.
>
> Q.    You don't think it is a physical problem?
>
> A.    No.

> Q. What do you think it is?
> A. A communications problem.  It doesn't physically bother me, so I don't consider it a problem.
>
> Q. It doesn't physically bother you, not hearing?
> A. No.

(*Id.*, Ex. A–4 at 58–59 [Dep. of Pl.].)  Plaintiff testified that he did not have any problems understanding any part of the booking process.  (*Id.*, Ex. A–4 at 64 [Dep. of Pl.].)  Plaintiff does not recall whether he mentioned his hearing impairment to any of the detention officers.  (*Id.*, Ex. A–4 at 60 [Dep. of Pl.].)  Plaintiff asserts that the detention officers "appeared to know that Plaintiff was deaf, therefore there was no reason for Plaintiff to tell them."[4]  (Pl.'s Resp., Resp. to Statement of Disputed Facts ¶ 34.)  During the period of time Plaintiff was in his holding cell, Plaintiff did not ask for anything except a roll of toilet paper.  (*Id.*, Statement of Undisputed Material Facts ¶ 38, Ex. A–4 at 65–68 [Dep of Pl.].)

Plaintiff testified that he did not speak to the night detention officer because he "didn't have any reason to talk to him."  (*Id.*, Ex. A–4 at 67 [Dep. of Pl.].)  Further, Plaintiff testified that he didn't ask the detention officer for anything because he "didn't have any reason to ask him for anything, not at night."  (*Id.*, Ex. A–4 at 68 [Dep. of Pl.].)  The following morning, Plaintiff saw a note on the wall near his cell that said "if [he] wanted to make a [sic] contact with anybody, to write a message and put it in this little slot."  (*Id.*)  Plaintiff wanted to call his attorney to get a status report, but he did not see a detention officer in the cellblock.  (*Id.*, Ex. A–4 at 66, 68 [Dep.

---

[4]Plaintiff does not offer any support for this conclusory allegation.  Conclusory allegations without more are insufficient to create a genuine issue of fact.  *Brown*, 63 F.3d at 972.

of Pl.].)  Plaintiff did not holler, speak out, or request a detention officer.  (*Id.*, Ex. A–4 at 69

[Dep. of Pl.].)  Plaintiff testified that he asked a fellow inmate for a piece of paper and, per the

instructions on the wall, he wrote a note requesting to see his attorney.  (*Id.*)

**2.**     ***Procedural History***

On November 4, 2004, Plaintiff filed a complaint in this court.  (Compl. and Jury Demand

[filed Nov. 4, 2004] [hereinafter "Compl."].)  Plaintiff's unartfully drafted complaint appears to

allege claims for (1) violation of section 1983 against Defendants Murnane, Emery, Bassett,

Casias, and the Las Animas County Sheriff's Department; and (2) violation of the ADA against

Defendants Casias, the Las Animas County Sheriff's Department; and the County of Las Animas.

(*Id.* ¶¶ 21–30.)  Plaintiff fleetingly mentions certain provisions of the Colorado Constitution and

Colorado statutes, yet it does not appear that Plaintiff asserts any Colorado state law claims.

(Compl.)  On December 9, 2004, Defendants filed their answer.  (Answer [filed Dec. 9, 2004].)

On March 3, 2005, the magistrate judge recommended that this court dismiss Defendant

Murnane.  (Recommendation for Dismissal of Claim Against Def. Murnane [filed Mar. 3, 3005].)

On March 31, 2005, I accepted the magistrate judge's order and dismissed Defendant Murnane

from this action.  (Order Accepting Magistrate Judge's Recommendation [filed Mar. 31, 2005].)

On March 26, 2005, Plaintiff filed a motion for extension of time to serve Defendant

Emery.  (Mot. for Extension of Time to Serve Kurt Emery [filed May 26, 2005].)  On June 15,

2005, Defendant Emery filed a motion to dismiss Plaintiff's complaint for untimely service of

process.  (Def. Kurt Emery's Mot. to Dismiss Pl.'s Compl. For Untimely Serv. of Process [filed

June 15, 2005].)  On July 6, 2005, Plaintiff filed a response to Defendant Emery's motion to

dismiss.  (Resp. to Def. Kurt Emery's Mot. to Dismiss Pl.'s Compl. Against Kurt Emery for

Untimely Serv. of Process [filed July 6, 2005].)  On July 20, 2005, Defendant Emery filed a reply

to his motion to dismiss.  (Def. Kurt Emery's Reply Br. in Supp. of Mot. to Dismiss Pl.'s Compl.

For Untimely Serv. of Process [filed July 20, 2005].)

On July 6, 2005, Defendants filed a motion for summary judgment.  (Defs.' Br.)

Defendants argue that (1) Defendant Emery had probable cause to arrest Plaintiff and therefore

Plaintiff does not have a valid Fourth or Fourteenth Amendment claim, (*id.* at 13–23); (2)

Defendant Bassett cannot be liable under section 1983 because he did not participate in Plaintiff's

arrest or incarceration, (*id.* at 20–21); and (3) Defendant Casias cannot be liable because he did

not direct or control Plaintiff's arrest or incarceration.  (*Id.* at 21–22.)  Finally, Defendants

contend that Plaintiff's ADA claim fails because he is not a qualified individual with a disability

and he did not request any auxiliary aid.  (*Id.* at 24–30.)  On August 29, 2005, Plaintiff filed a

response to Defendants' motion for summary judgment.  (Pl.'s Resp.)  On October 13, 2005,

Defendants filed a reply in support of their motion for summary judgment.  (Defs.' Reply in Supp.

of Defs.' Mot. for Summ. J. [filed Oct. 13, 2005].)  On October 23, 2005, Plaintiff filed a surreply

in response to Defendants' reply.  (Unopposed Pl.'s Request For Leave to File a Surreply to

Defs.' Reply Regarding Mot. for Summ. J. [filed Oct. 23, 2005].)  This matter is fully briefed.

On October 12, 2005, the magistrate judge granted Plaintiff's motion for extension of time

to serve Defendant Emery, *nunc pro tunc* to June 30, 2005.  (Minute Order [filed Oct. 12, 2005].)

On October 14, 2005, Defendant Emery appealed the magistrate's decision allowing Plaintiff an

extension to serve Defendant Emery.  (Def. Kurt Emery's Objection to Magistrate Judge's Order

Dated Oct. 12, 2005 [filed Oct. 14, 2005].)  Defendant Emery argues that the magistrate's order

is erroneous because it resolves Defendant Emery's pending dispositive motion.  (*Id.* at 1.)

Thirty-two days after Defendant Emery filed his objection to the magistrate's order Plaintiff filed

his response.  (Pl.'s Resp. to Defs.' Objection to Magistrate Judge's Order Dated Oct. 12, 2005

[filed Nov. 15, 2005].)  On November 22, 2005, Defendant Emery filed a motion to strike

Plaintiff's response to Defendant Emery's objection to the magistrate judge's order.  (Def. Kurt

Emery's Mot. to Strike Pl.'s Resp. to His Objection to Magistrate Judge's Minute Order of

October 12, 2005 [filed Nov. 22, 2005].)  Plaintiff has not filed anything more with respect to this

matter.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325).  The

nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record must be viewed in the light most favorable to the nonmoving party.  *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

**2.      Evaluation of Claims**

   **a.      Preliminary Matters**

From the outset, I note that it is incredibly difficult to discern exactly what Plaintiff is alleging in this lawsuit.  Paragraph seventeen of Plaintiff's complaint asserts that "Plaintiff was thus denied due process under the Fourteenth Amendment of the United States Constitution and under the Colorado Constitution, by the malicious, willful, and wanton actions of the false arrest and imprisonment."  (Compl. ¶ 17.)  Following this paragraph, Plaintiff sets forth his first claim for relief as "violation of Plaintiff's civil rights."  (*Id.* ¶¶ 21–24.)  Plaintiff professes to assert this claim against Defendants Emery, Bassett, Casias, and the Las Animas County Sheriff's Department.  (*Id.*)  Plaintiff does not cite to a specific statute or any portion of the United States or Colorado Constitutions.

Plaintiff's response to Defendants' motion for summary judgment attempts to clear up this confusion. (Pl.'s Resp. at 2–3.) Plaintiff asserts that his constitutional claims are as follows: "Defendants deprived him of his liberty without due process as guaranteed by the Fourteenth Amendment and unreasonably seized him in violation of the Fourth Amendment." (*Id.* at 3.) Further, Plaintiff only asserts these claims against Defendants Casias, Emery, and Bassett. (*Id.* at 2.)

Plaintiff acknowledges that he did not plead the Fourth Amendment violation in his initial complaint. (Pl.'s Resp. at 3.) Plaintiff requests that this court amend the complaint to reflect (1) Fourth and Fourteenth Amendment violations against Defendants Emery, Bassett, and Casias and (2) drop all claims against the Las Animas County Sheriff's Department and Defendant Casias, in his individual capacity. (*Id.* at 3, 5.) "Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint pursuant to Fed. R. Civ. P. 15." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n. 9 (10th Cir. 1998). As Defendants point out in their opening brief, Plaintiff's false arrest and imprisonment claims are most appropriately analyzed under the Fourth Amendment. (Defs.' Br. at 13.) Thus, I will, in effect, allow Plaintiff to amend his complaint to reflect Fourth and Fourteenth Amendment claims against Defendants Emery, Bassett, and Casias. Additionally, Plaintiff's section 1983 and ADA claims against Defendant Casias, in his individual capacity, and the Las Animas County Sheriff's Department are dismissed with prejudice. I evaluate Plaintiff's claims below.

**b.       42 U.S.C. § 1983**

Plaintiff alleges that Defendants Emery, Bassett, and Casias are liable under section 1983 because they falsely arrested and imprisoned him in violation of the Fourth and Fourteenth Amendments.  (Pl.'s Resp. at 3.)  Section 1983 provides:

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C.A. § 1983 (2004).  To establish a claim under section 1983, a plaintiff must establish (1) a deprivation of a federal or constitutional right by (2) a person acting under color of state law.[5] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  Section 1983 allows a plaintiff to seek money damages from government officials who have violated his or her constitutional rights.  *Id.*

Government officials performing discretionary functions, however, are generally granted qualified immunity and are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]).  A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.  *Id.* at 611.  If there is not a constitutional violation, then the defendants must prevail

---

[5]The parties do not dispute that Defendants are persons acting under color of state law.

and there is no necessity for further inquiries concerning qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). On the other hand, if the facts (viewed in a light most favorable to Plaintiff) show a violation of a constitutional right, then I must determine whether that right was clearly established. *Id.* I now address the constitutional questions beginning with the Fourth Amendment violation.

### *(1)    Fourth Amendment Violation*

Plaintiff asserts that Defendants Emery, Bassett, and Casias violated his Fourth Amendment right by falsely arresting him. (Pl.'s Resp. at 71.) I analyze the constitutionality of a warrantless arrest under the probable cause standard. *Romero v. Fay*, 45 F.3d 1472, 14 76 (10th Cir. 1995). A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. *Id.* "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Id.* (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1208–10 [10th Cir. 1988]). When, as here, a warrantless arrest is the subject of a section 1983 claim, Defendants are entitled to "'immunity if a reasonable officer could have believed that probable cause existed to arrest'" Plaintiff. *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 [1991]). I apply these principles to Defendants Emery's, Bassett's, and Casias' alleged conduct.

### *(A)    Defendant Emery*

Plaintiff's sole argument regarding Defendant Emery's liability under the Fourth Amendment is that:

> [a] reasonable officer would have known that to arrest a person for [temporary restraining order] violations, stalking and trespassing, the officer cannot falsify information and cannot use an affidavit for a [w]arrantless arrest when a judge has already ruled that the substantive portion of that affidavit failed to show probable cause.

(Pl.'s Resp. at 72.)  Not surprisingly, Plaintiff does not cite to any factual or legal support for these allegations.  Conclusory allegations without more are not enough to create a genuine issue of fact or survive summary judgment.  *Brown*, 63 F.3d at 972.[6]

Defendant Emery made a decision to arrest Plaintiff after an eye witness account of the TCPO violation.  (Defs.' Br., Ex. A–2 ¶¶ 3, 6, 10 [Aff. of Def. Emery].)  Defendant Emery included portions of Defendant Bassett's previous affidavit to place the situation in context for the presiding judge.  (*Id.*, Ex. A–2 ¶¶ 10 [Aff. of Def. Emery].)  Defendant Emery did not have any reason to doubt the veracity of the Murnanes at the time of the complaint.  (*Id.*)  Thus, the information within Defendant Emery's purview at the time suggested a violation of the TCPO.

Plaintiff suggests that Defendant Emery should have known that he did not have probable cause because "a judge [had] already ruled that the substantive portion of that affidavit failed to show probable cause."  (Pl.'s Resp. at 71.)  Plaintiff's argument is flawed in many respects.  First, Plaintiff does not offer support for his assertion that the judge ruled that only "substantive portions," as opposed to the entire affidavit, failed to show probable cause.  (*Id.*)  Second,

---

[6]Plaintiff does not connect his factual assertions with the alleged claim for relief.  It is not the court's responsibility to guess which facts support Plaintiff's claims.  Simply because Plaintiff is unhappy with Defendant Emery's conduct does not mean that Plaintiff has demonstrated genuine issues of material fact with respect to a cognizable legal claim.

Defendant Emery did not base his affidavit entirely on the previous affidavit.  Defendant Emery

had an eyewitness account of the TCPO violation.  This was enough to create probable cause.

Additionally, Plaintiff asserts that "Defendant Emery falsified his own portion of the

[a]ffidavit for [w]arrantless [a]rrest."   (Pl.'s Resp., Additional Disputed Facts ¶ 5.)  In support,

Plaintiff directs the court to Samantha Murnane's allegedly inconsistent testimony nine days after

the arrest.  (*Id.*)  Even assuming Samantha Murnane's testimony is inconsistent with Defendant

Emery's affidavit, this does not invalidate Defendant Emery's *previous* affidavit upon which he

based his probable cause determination.[7]  Accordingly, Plaintiff has not established that Defendant

Emery violated Plaintiff's Fourth Amendment rights, and thus Plaintiff's section 1983 claims fails

at the first inquiry.  As a result, Defendant Emery is entitled to qualified immunity.

### (B)   *Defendant Bassett*

Plaintiff asserts that Defendant Bassett is liable under the Fourth Amendment for

Plaintiff's alleged false arrest and false imprisonment.  (Pl.'s Resp. at 71–72.)  Defendant Bassett

did not participate in Plaintiff's arrest.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 19;

*deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 19.)  Defendant

Bassett did not communicate with the Murnanes on the day of the arrest and had no role in

---

[7]Plaintiff contends that "[i]n addition to all of the false statements Defendant . . . Emery included in the affidavits, Defendant Emery knowingly omitted all information regarding the VCR tape on February 10, 2004 . . . ."  (Pl.'s Resp. at 71–72.)  Not surprisingly, Plaintiff does not cite to any portion of the record, including his own affidavit or deposition, in support of these allegations.  (*Id.*)  Plaintiff discusses this "VCR" incident for the first time on page seventy-two of his response to Defendants' motion for summary judgment.  The recitation of these facts appears out of context.

Plaintiff's incarceration on that date. (*Id.*) "The plaintiff must show the defendant personally participated in the alleged violation, . . . and conclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation in an essential allegation in a section 1983 claim."). Plaintiff has not demonstrated how Defendant Bassett participated in his arrest and incarceration on November 3, 2003. Accordingly, Plaintiff has not established that Defendant Bassett violated his Fourth Amendment rights, and thus his section 1983 claims fails at the first inquiry. As a result, Defendant Bassett is entitled to qualified immunity.

Plaintiff argues that he can establish a Fourth Amendment violation because Defendant Bassett allegedly provided false allegations in an affidavit. (Pl.'s Resp. at 72.) Plaintiff's argument misses the point. First, Defendant Emery arrested Plaintiff based on his own affidavit not Defendant Bassett's affidavit. Second, while Defendant Emery may have used portions of Defendant Bassett's old affidavit, Defendant Emery based his affidavit on new and corroborating information. Irrespective of whether Defendant Emery used portions of Defendant Bassett's affidavit, Defendant Emery had probable cause to arrest Plaintiff based on an eye witness complaint. Thus, Plaintiff's argument as to this point is unavailing.

### (C)     Defendant Casias

Finally, Plaintiff contends that Defendant Casias is liable because "[Defendant] Casias'
supervision and training of his deputies in all aspects was so lacking that this lack can only be
termed so reckless that violations of conduct was [sic] inevitable, which deprives [Defendant]
Casias for [sic] qualified immunity." (Pl.'s Resp. at 73.)  Additionally, Plaintiff contends that
"[Defendant] Casias, as the Sheriff, is responsible for all Deputies' actions." (*Id.*)  Plaintiff
misunderstands and misstates the law entirely.

"There is no concept of supervisor liability under section 1983." *Ruark v. Solano*, 928
F.2d 947, 950 (10th Cir. 1991), *overruled on other grounds*, *Lewis v. Casey*, 518 U.S. 343
(1996).  In order to establish supervisor liability, Plaintiff must demonstrate an affirmative link
between the constitutional deprivation and either the supervisor's personal participation, his
exercise of control or direction, or his failure to supervise. *Holland ex rel. Overdorff v.
Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).  Here, Plaintiff has not demonstrated any facts
suggesting that Defendant Casias personally participated in the alleged false arrest or
imprisonment.  Indeed, Plaintiff has not alleged any facts to establish that Defendant Casias
directed or controlled Plaintiff's arrest or incarceration.  Rather, Plaintiff's only allegations
regarding Defendant Casias are general and conclusory in nature.  Specifically, Plaintiff alleges
that: (1) "[Defendant] Casias did not supervise the deputies on an everyday basis;" and (2)
Defendant Casias never taught Defendant Emery investigative procedures.  (Pl.'s Resp. at 73,
Statement of Additional Disputed Facts ¶¶ 20–22.)  Thus, Plaintiff has not demonstrated an
affirmative link between any conduct by Defendant Casias and Plaintiff's alleged constitutional

deprivation.  Accordingly, Plaintiff has not established that Defendant Casias violated his Fourth

Amendment rights, and thus Plaintiff's section 1983 claim fails at the first inquiry.  As a result,

Defendant Casias is entitled to qualified immunity.

### *(2)   Fourteenth Amendment Violation*

As stated above, Plaintiff alleges a Fourteenth Amendment violation against Defendants

Emery, Bassett, and Casias.  (Pl.'s Resp. at 2–3; Compl. ¶¶ 21–24.)  It is unclear whether Plaintiff

is asserting a procedural or substantive due process claim under the Fourteenth Amendment.  I

briefly evaluate procedural and substantive due process below.

Plaintiff's Fourteenth Amendment procedural due process claim necessarily fails because

Plaintiff failed to establish a violation of the Fourth Amendment.  *See Pino*, 75 F.3d at 1469.

"The Fourth Amendment's protection against unreasonable searches and seizures more

specifically applies to [Plaintiff's] situation than the Fourteenth Amendment's general substantive

and procedural due process guarantees."  *Id.*  Procedural due process affords Plaintiff no more

protection than his right to be free from unreasonable seizure because:

> [t]he Fourth Amendment [probable cause requirement] was tailored explicitly for
> the criminal justice system, and its balance between individual and public interest
> always has been thought to define the 'process that is due' for seizures of persons
> or property in criminal cases . . . .

*Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 [1975]).  Since Plaintiff has not

established that Defendants Emery, Bassett, or Casias acted unreasonably and in violation of the

Fourth Amendment, it follows that he has not established that they violated his procedural due

process rights.

Plaintiff's Fourteenth Amendment substantive due process claim is even less availing.  A constitutional challenge based on an arrest that allegedly lacked probable cause "must be brought under the specific guarantees of the Fourth Amendment rather than the generalized guarantee of substantive due process."  *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 273 [1994]).  Thus, even assuming Plaintiff alleged a substantive due process claim, this claim necessarily fails.  Accordingly, Defendants Emery, Bassett, and Casias are entitled to summary judgment on Plaintiff's Fourteenth Amendment claims.

> **c.** **ADA**

Plaintiff's second claim for relief alleges a violation of the ADA against Defendants Casias and the County of Las Animas.  (Compl. ¶¶ 25–30; Pl.'s Resp. at 5.)  Plaintiff asserts that:

> [h]e is profoundly deaf and has severe limitation to his hearing even with cochlear implant he cannot hear televisions, thus his due process rights are violated by not having closed caption televised advisory hearings; [sic] he cannot use the telephone, thus his ADA rights are violated by the County of Las Animas not having had [Text Teletype ("TTY")] equipment.

(Pl.'s Resp. at 70.)

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  Title II of the ADA prescribes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA extends to discrimination against inmates detained in county jail.  *Atwell v. Hart County, Ky.*, 122 Fed. Appx. 215, 218 (6th Cir. 2005); *see also Pennsylvania*

*Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212–213 (1998) (the ADA extends to state prison inmates).

In order to state a claim under Title II of the ADA, Plaintiff must allege that (1) he is a qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  42 U.S.C. § 12102(1)(B).  Plaintiff's claim fails on the first prong.

Plaintiff must prove that he is a qualified individual under the ADA.  *Id.*  In the context of detention in a county jail, Plaintiff must show that he suffers from a physical or mental impairment that placed a "substantial" limitation on a major life activity, such as walking, seeing or hearing.  *Atwell,* 122 Fed. Appx. at 218.  "Merely having an impairment does not make one disabled for purposes of the ADA."  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 196 (2002).  In order to prove that an impairment is substantially limiting, a Plaintiff must show "'the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'"  *Id.* at 198 (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 [1999] [holding that monocular vision is not invariably a disability, but must be analyzed on an individual basis, taking into account the individual's ability to compensate for the impairment]).  The determination of disability must be based on a case by case basis.  *Id.*

Here, Plaintiff cannot prove that his hearing impairment substantially limits his major life activity of hearing.  Plaintiff testified that his hearing impairment is neither a physical or mental

impairment.  (*Id.*, Ex. A–4 at 58–59 [Dep. of Pl.].)  Further, Plaintiff testified that his inability to

hear does not affect his life or bother him in any way.

> Q.    It doesn't physically bother you, not hearing?
> A.    No.

(*Id.*)  Thus, by Plaintiff's own admission, Plaintiff's hearing impairment is not "substantial" within

the meaning of the ADA.  Accordingly, Plaintiff's ADA claim must fail because Plaintiff cannot

show he is a qualified individual with a disability.

Even assuming Plaintiff could establish that he is a qualified individual under the ADA,

Plaintiff's ADA claim would still fail under the second prong.  In order to state a claim under Title

II of the ADA, Plaintiff must allege that he was excluded from participation in or denied the

benefits of services, programs, or activities of a public entity.  *See Lightbourn v. County of El

Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997) (discussing 42 U.S.C. § 2132).  A public entity

"shall furnish appropriate auxiliary aids and services where necessary to afford an individual with

a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or

activity conducted by a public entity."  28 C.F.R. § 35.160(b)(1).  "'In determining what type of

auxiliary aid and service is necessary, a public entity shall give primary consideration to the

requests of the individual with disabilities.'"  *Cole v. Velasquez*, 67 Fed. Appx. 252, 252 (5th Cir.

2003) (quoting 28 C.F.R. § 35.160[b][2]).  "Auxiliary aids and services" are defined by the ADA

to include "qualified interpreters or other effective methods of making aurally delivered materials

available to individuals with hearing impairments."  42 U.S.C. § 12102(1)(B).  Plaintiff contends

that he "has severe limitations to his hearing even with a cochlear implant," and he was "denied

auxiliary aids." (Pl.'s Resp. at 68, 70.)  Specifically, Plaintiff contends that he was denied use of

the telephone and TTY equipment.  (*Id.* at 68.)  Plaintiff does not offer any support for this

conclusory statement.  Conclusory allegations, without more, are not sufficient to survive

summary judgment.  *Brown*, 63 F.3d at 972.  Moreover, Plaintiff's deposition testimony refutes

this argument in its entirety.  As set forth in more detail in the "Factual Background" section,

Plaintiff testified that he never requested anything except a roll of toilet paper from the detention

officers.  (Defs.' Br., Ex. A–4 at 65–68 [Dep. of Pl.].)  Indeed, Plaintiff testified that he did not

speak to the night detention officer and did not have any reason to ask him for anything.  (*Id.*, Ex.

A–4 at 68 [Dep. of Pl.].)  Thus, Plaintiff has not demonstrated any facts to suggest that he (1)

informed the detention officers of his alleged disability, or (2) requested any kind of auxiliary aid

or accommodation.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA

claim.

### 3.   *Conclusions*

Based on the foregoing it is therefore ORDERED that:

1.   Defendant Kurt Emery's motion to dismiss (# 39) is DENIED as moot.

2.   Defendants' motion for summary judgment (# 40) is GRANTED.

3.   Defendant Kurt Emery's appeal of the magistrate judge's decision (# 61) is DENIED

as moot.

4.   Plaintiff's motion for leave to file a surreply (# 62) is DENIED.

5.   Defendant Kurt Emery's motion to strike (# 65) is DENIED as moot.

6.    The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff,

dismissing all claims with prejudice.  Defendants may have their costs by filing a bill of costs

within eleven days of the date of this order.

Dated this 16th of December, 2005.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge